UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

LOIS EMA JEAN WHITED,            ]
                                 ]
     Plaintiff,                  ]
                                 ]
v.                               ]    No. 2-08-0061
                                 ]    JUDGE HAYNES
                                 ]
COMMUNITY BANK OF THE            ]
CUMBERLANDS, INC.,               ]
                                 ]
     Defendant.                  ]

M E M O R A N D U M

Plaintiff, Lois Ema Jean Whited, filed this action under the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA") and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 et seq. ("THRA"), against the Defendant, Community Bank of the Cumberlands, Inc. Plaintiff asserts that the Defendant discriminated against her on the basis of her disability and also that the Defendant terminated Plaintiff in retaliation for Plaintiff seeking a reasonable accommodation for her disability under the ADA.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 16), contending that Plaintiff's physical impairment does not substantially limit her in any major life activity and Plaintiff cannot produce any evidence that she was terminated solely because of her disability.

In response (Docket Entry No. 22), Plaintiff asserts that she has established a prima facie case that she is disabled under the ADA.

For the reasons set forth below, the Court finds from the facts that Plaintiff has failed to show that she has a disability and concludes that the Defendant's motion for summary judgment should be granted only to this claim.

## I. FINDINGS OF FACT[1]

Plaintiff, Lois Ema Jean Whited, began working as a bank teller for the Defendant in 2001. (Docket Entry No. 29, Defendant's Response to Plaintiff's Statement of Undisputed Facts, at ¶¶ 1-2). Plaintiff suffers from an eye condition known as blepharospasm that causes involuntary spasms causing her eyes to shut. Id. at ¶ 31. Plaintiff had surgery on her eye lids in 2002 to treat her condition. Id. at ¶ 32. However, despite the surgery, Plaintiff's condition required her to have injections in both eyes every two months to control the spasms and to keep her eyes from closing. Id. at ¶ 33. As treated, Plaintiff's eyes do

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because there are not any material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

2

not limit her ability to do anything. (Docket Entry No. 25, Plaintiff's Response to Defendant's Statement of Undisputed Facts, at ¶ 2). Nor does Plaintiff suffer from any other physical or mental impairment. Id. at ¶ 1. Jonathan Garrett, Plaintiff's supervisor and branch manager, had been aware of Plaintiff's condition since 2001 and knew that Plaintiff occasionally had to take time off to receive her injections. (Docket Entry No. 29, at ¶¶ 9-13).

Plaintiff received her eye injections at a clinic in Nashville, Tennessee. (Docket Entry No. 1, Complaint, at ¶ 13). According to Plaintiff, the clinic only administered the injections on Thursdays. Id. Plaintiff would submit a form to the branch manager requesting time off to get her injections and the branch manager would either grant or deny the request based upon staffing. (Docket Entry No. 29, at ¶ 14). The Defendant never denied Plaintiff's requests. (Docket Entry No. 20, Deposition of Plaintiff at p. 49).

Plaintiff alleges that on December 5, 2006, she requested to be off on December 14, 2006, so that she could travel to Nashville to receive her injections for her eyes. (Docket Entry No. 1, at ¶ 15). After not receiving a response from Garrett, Plaintiff spoke to him the next day. According to Plaintiff, Garrett advised her that he had already promised two other employees time off on December 14, 2006. Id. at ¶ 16. Plaintiff admits that it would

3

Case 2:08-cv-00061   Document 33   Filed 02/18/10   Page 3 of 18 PageID #: 156

have been burdensome to have three people off on the same day. (Docket Entry No. 20, Deposition of Plaintiff at p. 53). Later, Garrett communicated to Plaintiff that he got one of the other employees to move their day off so that Plaintiff could be off on December 14. Id.

Also, on December 6, 2006, a conflict arose between Plaintiff and Garrett concerning bank notices being shuffled around at the teller windows. (Docket Entry No. 25, at ¶ 4). According to Plaintiff's Complaint, one of Plaintiff's duties was to fold and mail daily bank notices. (Docket Entry No. 1, at ¶ 19). Plaintiff asked another teller to assist her in this task. Id. Upon learning that Plaintiff had sought assistance in folding notices from another teller, Garrett emailed Plaintiff asking her why she was asking others to help her do her job. Id. at ¶ 20. In response Plaintiff emailed bank president Don Calcote, also copying Garrett to the email response, and stated that she did not understand why Garret was so upset with her. Id. Plaintiff alleges that the email to Calcote angered Garrett and that Garrett "was very upset with the Plaintiff about the incident." Id. at ¶¶ 20-21. In her deposition, Plaintiff testified that after emailing Calcote, Garrett was upset and told her that "[she]'d pay for that." (Docket Entry No. 20, Deposition of Plaintiff at pp. 73, 74). Plaintiff was terminated the next day, December 7, 2006, for

4

insubordination. (Docket Entry No. 29, at ¶ 8; Docket Entry No. 25, at ¶ 7).

Defendant's employee handbook contains a multiple step discipline and termination procedure. (Docket Entry No. 29, at ¶¶ 19-20). The first step in the discipline process is an oral reprimand, followed by a written warning outlining the employee's problems and allowing the employee to submit additional evidence in defense. Id. at ¶¶ 21-23. The third step is a probationary period, and the last step is termination. Id. at ¶ 26. Defendant did not present Plaintiff with a written warning, nor was she ever placed on probation, although she had received oral reprimands about validating or putting work through her teller computer system and about talking rudely to her co-workers. Id. at ¶¶ 25, 27, 30; Docket Entry No. 25, ¶ at 3. According to Defendant's handbook, there are four areas of conduct that warrant immediate dismissal: (1) dishonesty, including theft, embezzlement or stealing; (2) walking off the job; (3) falsifying records; and (4) breach of trust. Id. at ¶ 28. Admittedly, Plaintiff's termination for insubordination does not fit one of the four categories. Id. at ¶ 29.

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee

5

Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6

`genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). <u>But</u> <u>see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in <u>Celotex</u>:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

<u>Celotex</u>, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." <u>Martin v. Kelley</u>, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine

issues of material fact. <u>Sims v. Memphis Processors, Inc.</u>, 926 F.2d 524, 526 (6th Cir. 1991)(quoting <u>Kochins v. Linden-Alimak, Inc.</u>, 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" <u>Emmons</u>, 874 F.2d at 353 (quoting <u>Celotex</u> and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting <u>Liberty Lobby</u>). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

<u>Street</u>, 886 F.2d at 1480 (citations omitted). <u>See also</u> <u>Hutt v. Gibson Fiber Glass Products</u>, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require

8

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting <u>Liberty Lobby</u>).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in

9

> favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon

10

which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In <u>Street</u>, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

    1.    Complex cases are not necessarily inappropriate for summary judgment.

    2.    Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

    3.    The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

    4.    This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

    5.    A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

    6.    As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

    7.    The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

11

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The ADA was enacted to counterbalance society's historic tendency to isolate and segregate individuals with disabilities. 42 U.S.C. § 12101. The ADA serves as a mechanism to level the playing field so that individuals living with disabilities are

12

treated fairly and afforded equal opportunity within the workplace, among other areas. Id. Thus, the ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

To recover on a claim of discrimination under the ADA, a plaintiff must show that: (1) she is an individual with a disability; (2) she is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) she was either denied a reasonable accommodation for her disability or she suffered an adverse employment action solely because of her disability. Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996); Smith v. Ameritech, 129 F.3d 857, 866 (6th Cir. 1997).

An individual is disabled under the ADA if: (1) she has a physical or mental impairment that substantially limits one or more of her major life activities; (2) she has a record of such impairment; or (3) she is regarded as having such an impairment. 42 U.S.C. § 12102(2). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29

13

C.F.R. § 1630.2(i). A major life activity is substantially limited if the employee is:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Id. at § 1630.2(j)(i), (ii). In the context of working, a plaintiff would be required to show an inability to work in a broad class of jobs, not just "one type of job, a specialized job, or a particular job of choice." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 492 (1999); 29 C.F.R. § 1630.2(j)(3)(i).

In Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002), the Supreme Court directed that for purposes of qualification under the ADA's definition of disabled, the terms "substantially" and "major" must be "interpreted strictly."[2] The Court stated that "Merely having an impairment does not make one disabled for purposes of the ADA." Id. at 195. For an impairment to be a substantial limitation of a major life activity, the

---

[2]The Court notes that the "ADA Amendments Act of 2008" ("ADAAA"), that became effective January 1, 2009, Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008), "does not apply retroactively to govern conduct occurring before the Act became effective." Milholland v. Sumner County Bd. Of Educ., 569 F.3d 562, 565 (6th Cir. 2009). Thus, because the alleged conduct occurred before the ADAAA became effective the Court is to apply the ADA law that was in effect at the time of the alleged conduct.

14

impairment must "prevent[] or severely restrict[] [an] individual from doing activities that are of central importance to most people's daily lives." Id. at 198. Further, "[t]he impairment's impact must also be permanent or long term." Id. Thus, "any impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the [ADA]." Mahon v. Crowell, 295 F.3d 585, 590-91 (6th Cir. 2002).

Under the ADA, the disability issue must be determined on a case-by-case basis. See Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566, 567 (1999) (for an ADA claim, the ADA plaintiff must "prove a disability by offering evidence that the extent of the limitation in terms of their own experience . . . is substantial"). Moreover, "the determination of whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment." Sutton, 527 U.S. at 475.

### A. DISABILITY CLAIM UNDER ADA

Plaintiff admits that with her injections her condition does not limit her ability to do anything. Thus, Plaintiff has not produced any evidence that she has a physical or mental impairment that substantially limits one or more of her major life activities. Accordingly, Plaintiff's disability claim under the ADA is without merit.

### B. DISABILITY CLAIM UNDER THRA

15

Plaintiff's complaint alleges disability discrimination under the THRA. However, there is no separate claim of disability discrimination under the THRA. Instead, the Tennessee Disability Act,[3] Tenn. Code Ann. § 8-50-103 (2008), provides a claim for discrimination on the basis of "disability," as defined under the THRA, Tenn. Code Ann. § 4-21-102(3)(A) (2008). See Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 705 (Tenn. 2000) ("The [THD] embodies the definitions and remedies provided by the [THRA]."). "The [TDA] works in conjunction with the THRA to grant an individual a civil cause of action for wrongful discrimination based upon a [disability]." Perlberg v. Brencor Asset Mgmt., 63 S.W.3d 390, 394 (Tenn. Ct. App. 2001). Thus, disability claims alleged under the THRA have been treated as being alleged under the TDA. Id.; see also Adams v. TRW Automotives U.S. LLC., No. 3:03-1240, 2005 WL 1862302, at *18 (M.D. Tenn. July 22, 2005) (citing Dunn v. Sharp Mfg. Co. of America, No. 01-2679 MA/V, 2003 WL 1793038, at *3 (W.D. Tenn. Jan.10, 2003)) (although plaintiff alleged a disability discrimination claim under the THRA, the court deemed the claim to have been asserted under the TDA).

Tennessee courts look to federal law for guidance in analyzing disability discrimination claims. Barnes, 48 S.W.3d at 705; Sasser v. Quebecor Printing, 159 S.W.3d 579, 584 (Tenn. Ct. App. 2004) ("A

---

[3]The Tennessee Disability Act was formerly known as the Tennessee Handicap Act, but was amended, effective April 7, 2008. See Tenn. Code Ann. § 8-50-103(a) (2008).

16

claim brought under the THA is analyzed under the same principles as those utilized for the Americans with Disabilities Act ("ADA")."); Nance v. Goodyear Tire & Rubber, Co., 527 F.3d 539, 553 n.5 (6th Cir. 2008) ("Both federal and Tennessee disability discrimination actions require the same analysis."). Accordingly, Plaintiff's state law disability claim fails for the same reasons as her ADA claim.

### C. RETALIATION CLAIM

In her Complaint, Plaintiff alleges that "the motive for her termination was retaliation for her efforts to seek a reasonable accommodation from her employer under the ADA." (Docket Entry No. 1, at ¶ 25). Although Plaintiff's federal and state law disability claim is without merit, "A plaintiff may [still] prevail on a disability-retaliation claim 'even if the underlying claim of disability fails.'" Bryson v. Regis Corp., 498 F.3d 561, 577 (6th Cir. 2007) (citations omitted). To state a claim for disability-retaliation, Plaintiff must prove the following: "that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action." Id.; Penny v. United Parcel Serv., 128 F.3d 408, 417 (6th Cir. 1997). A similar analysis is conducted under the THRA. See Allen v. McPhee, 240 S.W.3d 803, 820 (Tenn. Ct. App. 2007) (a plaintiff must demonstrate: "1) that she engaged in activity protected by the

17

THRA; 2) that the exercise of her protected rights was known to the defendant; 3) that the defendant thereafter took a materially adverse action against her; and 4) there was a causal connection between the protected activity and the materially adverse action.").

"If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action. The plaintiff, of course, bears the ultimate burden of proving that the proffered reason for the action was merely a pretext for discrimination." Penny, 128 F.3d at 417.

As the Defendant's motion fails to address Plaintiff's retaliation claim, the retaliation claim survives.

### III. CONCLUSION

Accordingly, the Defendant's motion for summary judgment (Docket Entry No. 16) should be granted as to Plaintiff's disability claim.

An appropriate Order is filed herewith.

**ENTERED** this the 18th day of February, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge